IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| CHRISTINE L. ALBRECHT, | ) | CASE NO.    1:14-cv-02116 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | JUDGE DAN AARON POLSTER |
| | ) | |
| | ) | MAGISTRATE JUDGE GREG WHITE |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of Social Security | ) | **REPORT & RECOMMENDATION** |
| | ) | |
| Defendant. | ) | |

Plaintiff Christine L. Albrecht ("Albrecht") challenges the final decision of the Acting

Commissioner of Social Security, Carolyn W. Colvin ("Commissioner"), denying Albrecht's

claim for a Period of Disability ("POD"), Disability Insurance Benefits ("DIB"), and

Supplemental Security Income ("SSI") under Title II and Title XVI of the Social Security Act

("Act"), 42 U.S.C. §§ 416(i), 423, 1381 *et seq*.  This matter is before the Court pursuant to 42

U.S.C. § 405(g) and Local Rule 72.2(b).

For the reasons set forth below, it is recommended that the final decision of the

Commissioner be AFFIRMED.

**I.  Procedural History**

On June 28, 2011 and August 17, 2011, Albrecht filed applications for POD, DIB, and

SSI alleging a disability onset date of November 10, 2010.  (Tr. 25.)  Her application was denied

both initially and upon reconsideration.

On April 25, 2013, an Administrative Law Judge ("ALJ") held a hearing during which

Albrecht, represented by counsel, and an impartial vocational expert ("VE") testified.  (Tr. 25.)

On May 24, 2013, the ALJ found Albrecht was able to perform a significant number of jobs in

the national economy and, therefore, was not disabled.  (Tr. 35-36.)  The ALJ's decision became

final when the Appeals Council denied further review.

## II.  Evidence

### *Personal and Vocational Evidence*

Age forty-seven (47) at the time of her administrative hearing, Albrecht is a "younger"

person under social security regulations.  *See* 20 C.F.R. § 404.1563(c) & 416.963(c).  Albrecht

has at least a high school education and past relevant work as a deli cutter-slicer, sales person,

overnight stocker, and department manager.  (Tr. 34-35.)

### *Relevant Hearing Testimony*

At the hearing, the ALJ posed the following hypothetical question to the VE:

> [L]et's assume an individual who can do a range of light work.  Pushing
> and pulling will be limited to occasional with foot controls; frequent with
> overhead reaching.
>
> * * *
>
> Postural limitations will be occasional climbing of ramps and stairs; no climbing
> of ropes, ladders or scaffolds; occasional balancing, stooping, kneeling and
> crouching; no crawling.  Environmental will be no exposure to unprotected
> heights or moving mechanical parts.  Mental limitations will be simple, routine
> and repetitive tasks; low production rate pace or quotas; simple work-related
> decision making; frequent contact with supervisors and coworkers; occasional
> contact with the public; and a low stress work environment that includes
> infrequent changes that are gradually introduced.  Could such an individual
> perform any of the past work?

(Tr. 69.)

The VE testified that such an individual could not perform Albrecht's past relevant work.

(Tr. 70.)  Nonetheless, such an individual could perform the jobs of a mail clerk, Dictionary of

Occupational Titles ("DOT") § 209.687-026; packager, DOT § 559.687-074; and, table worker,

DOT § 728.684-022.  *Id*.  When asked by the ALJ whether his testimony was consistent with the

DOT, the VE responded in the affirmative.  (Tr. 70.)

The ALJ proceeded to pose a second hypothetical question which asked the ALJ to

assume the same limitations as stated above, but with reduction to the sedentary exertional level.

(Tr. 70.)  The VE testified that such an individual could perform the jobs of a document preparer,

DOT § 249.587-018; mailing house worker, DOT § 209.587-010; and, polisher, DOT § 713.687-

034.  (Tr. 70-71.)  The ALJ again inquired whether this testimony was consistent with the DOT, and the VE responded in the affirmative.  (Tr. 71.)

Finally, the ALJ asked the VE to assume the hypothetical individual would be off task twenty percent of the workday because of an inability to maintain concentration, persistence and pace caused by pain or might miss more than two days per month because of illness.  (Tr. 71.) The VE opined that such an individual would be unemployable "on both counts."  *Id*.

### III.  Standard for Disability

In order to establish entitlement to DIB under the Act, a claimant must be insured at the time of disability and must prove an inability to engage "in substantial gainful activity by reason of any medically determinable physical or mental impairment," or combination of impairments, that can be expected to "result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  20 C.F.R. §§ 404.130, 404.315 and 404.1505(a).[1]

A claimant is entitled to a POD only if: (1) she had a disability; (2) she was insured when she became disabled; and (3) she filed while she was disabled or within twelve months of the date the disability ended.  42 U.S.C. § 416(i)(2)(E); 20 C.F.R. § 404.320.

Albrecht was insured on her alleged disability onset date, November 10, 2010 and remained insured through the date of the ALJ's decision, May 14, 2013.  (Tr. 25.)  Therefore, in order to be entitled to POD and DIB, Albrecht must establish a continuous twelve month period of disability commencing between these dates.  Any discontinuity in the twelve month period

---

[1]  The entire process entails a five-step analysis as follows: First, the claimant must not be engaged in "substantial gainful activity."  Second, the claimant must suffer from a "severe impairment."  A "severe impairment" is one which "significantly limits ... physical or mental ability to do basic work activities."  Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment, or combination of impairments, meets a required listing under 20 C.F.R. § 404, Subpt. P, App. 1, the claimant is presumed to be disabled regardless of age, education or work experience. 20 C.F.R. §§ 404.1520(d) and 416.920(d)(2000).  Fourth, if the claimant's impairment does not prevent the performance of past relevant work, the claimant is not disabled. For the fifth and final step, even though the claimant's impairment does prevent performance of past relevant work, if other work exists in the national economy that can be performed, the claimant is not disabled. *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).

precludes an entitlement to benefits. *See Mullis v. Bowen,* 861 F.2d 991, 994 (6th Cir. 1988); *Henry v. Gardner*, 381 F. 2d 191, 195 (6th Cir. 1967).

A disabled claimant may also be entitled to receive SSI benefits. 20 C.F.R. § 416.905; *Kirk v. Sec'y of Health & Human Servs.,* 667 F.2d 524 (6th Cir. 1981). To receive SSI benefits, a claimant must meet certain income and resource limitations. 20 C.F.R. §§ 416.1100 and 416.1201.

### IV. Summary of Commissioner's Decision

The ALJ found Albrecht established medically determinable, severe impairments, due to degenerative disc disease of the lumbar spine with disc protrusion, Barrett's disease, gastroesophageal reflux disease (GERD), gastritis, dysthmic disorder, and anxiety disorder. (Tr. 27.) However, her impairments, either singularly or in combination, did not meet or equal one listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. (Tr. 28.) Albrecht was found incapable of performing her past relevant work, but was determined to have a Residual Functional Capacity ("RFC") for a limited range of sedentary work. (Tr. 30-34.) The ALJ then used the Medical Vocational Guidelines ("the grid") as a framework and VE testimony to determine that Albrecht was not disabled. (Tr. 35-36.)

### V. Standard of Review

This Court's review is limited to determining whether there is substantial evidence in the record to support the ALJ's findings of fact and whether the correct legal standards were applied. *See Elam v. Comm'r of Soc. Sec.*, 348 F.3d 124, 125 (6th Cir. 2003) ("decision must be affirmed if the administrative law judge's findings and inferences are reasonably drawn from the record or supported by substantial evidence, even if that evidence could support a contrary decision."); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983). Substantial evidence has been defined as "[e]vidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966); *see also Richardson v. Perales*, 402 U.S. 389 (1971).

The findings of the Commissioner are not subject to reversal merely because there exists

in the record substantial evidence to support a different conclusion.  *Buxton v. Halter*, 246 F.3d 762, 772-3 (6th Cir. 2001) (*citing Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)); *see also Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999)("Even if the evidence could also support another conclusion, the decision of the Administrative Law Judge must stand if the evidence could reasonably support the conclusion reached.  *See Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997).")  This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference.  *Mullen*, 800 F.2d at 545 (*citing Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)).

In addition to considering whether the Commissioner's decision was supported by substantial evidence, the Court must determine whether proper legal standards were applied.  Failure of the Commissioner to apply the correct legal standards as promulgated by the regulations is grounds for reversal.  *See, e.g.,White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009); *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2006) ("Even if supported by substantial evidence, however, a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.")

Finally, a district court cannot uphold an ALJ's decision, even if there "is enough evidence in the record to support the decision, [where] the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result."  *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011) (*quoting Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir.1996); *accord Shrader v. Astrue*, 2012 WL 5383120 (E.D. Mich. Nov. 1, 2012) ("If relevant evidence is not mentioned, the Court cannot determine if it was discounted or merely overlooked."); *McHugh v. Astrue*, 2011 WL 6130824 (S.D. Ohio Nov. 15, 2011); *Gilliam v. Astrue*, 2010 WL 2837260 (E.D. Tenn. July 19, 2010); *Hook v. Astrue*, 2010 WL 2929562 (N.D. Ohio July 9, 2010).

## VI.  Analysis

*Hypothetical Question*

In her first assignment of error, Albrecht claims the ALJ erred at Step Five of the

sequential process by failing to include anxiety in the hypothetical questions posed to the VE. (ECF No. 13 at 5-6.)  The Commissioner argues that the RFC included a number of limitations based on Albrecht's mental impairments and that Albrecht fails to argue specific evidence that supports more restrictive limitations.  (ECF No. 14 at 5.)

A hypothetical question must precisely and comprehensively set forth every physical and mental impairment that the ALJ accepts as true and significant.  *See Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987).  Where the hypothetical question is supported by evidence in the record, it need not reflect unsubstantiated allegations by the claimant.  *See Blacha v. Sec'y of Health & Human Servs.*, 927 F.2d 228, 231 (6th Cir. 1990).  In fashioning a hypothetical question to be posed to a VE, the ALJ is required to incorporate only those limitations that he accepts as credible.  *Griffeth v. Comm'r of Soc. Sec.*, 217 Fed. Appx. 425, 429 (6th Cir. 2007) (*citing Casey v. Sec'y of HHS*, 987 F.2d 1230, 1235 (6th Cir. 1993)).  However, where the ALJ relies upon a hypothetical question that fails to adequately account for all of the claimant's limitations, it follows that a finding of disability is not based on substantial evidence. *See Newkirk v. Shalala*, 25 F.3d 316, 317 (6th Cir. 1994).

> The RFC, which mirrors the second hypothetical posed to the VE, is as follows:
>
> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except that the claimant can occasionally push and pull with foot controls, and can frequently reach overhead bilaterally. Additionally, the claimant can occasionally climb ramps and stairs, can never climb ladders, ropes, or scaffolds, and can occasionally, balance, stoop, kneel, and crouch; however, the claimant can never crawl.  Moreover, the claimant must have no exposure to unprotected heights or moving mechanical parts.  Further, any work should involve only simple, routine and repetitive tasks, with low production rate pace or quotas, and simple work-related decision making.  Finally, any work can include frequent contact with supervisors and co-workers, occasional contact with the public, and must be in a low-stress work environment that includes infrequent changes that are gradually introduced.

(Tr. 30.)

The Commissioner is correct that Albrecht's Brief on the Merits does not identify any specific functional limitations based on her anxiety, nor does she meaningfully develop an argument as to how the mental limitations included in the RFC fail to adequately account for her limitations.  (ECF No. 13 at 6.)  Albrecht's argument is essentially that anxiety disorder itself

was not included among the limitations given to the VE.  *Id.*  In *Webb v. Commissioner of Social Security*, 368 F.3d 629, 633 (6th Cir. 2004), the Sixth Circuit rejected an argument that an ALJ is required to list a claimant's medical conditions in the hypothetical question posed to a VE for the hypothetical to be considered complete and accurate.  The *Webb* decision explained that "a hypothetical question need only reference all of a claimant's limitations, without reference to the claimant's medical conditions."  *Id*. (citations omitted).  The *Webb* court further explained that including such information in a hypothetical was not only unnecessary, but it would also be contrary to the function of a VE:

> Moreover, an interpretation of *Howard* that would require vocational experts to evaluate the effect of medical conditions would be inconsistent with the purpose that vocational experts serve under social security regulations.  Under those regulations, the ALJ is charged with the responsibility of evaluating the medical evidence and the claimant's testimony to form an "assessment of [her] residual functional capacity." 20 C.F.R. § 416.920(a)(4)(iv).  The vocational expert testifies on the basis of a claimant's "residual functional capacity and . . . age, education, and work experience" and assesses whether the claimant "can make an adjustment to other work." 20 C.F.R. § 416.920(a)(4)(v).  The vocational expert's testimony is directed solely to whether, given a claimant's age, experience, and education, along with the ALJ's assessment of what she "can and cannot do," there exist a significant number of employment opportunities for her in the regional and national economies.  The vocational expert is not expected to evaluate the claimant's medical conditions in making this determination.  Indeed, vocational experts are not required to have any medical training, so any evaluation of medical evidence they perform would be outside their area of expertise.  Accordingly, in light of the facts present in *Howard*, this circuit's prior case law, and the role of a vocational expert under the social security regulations, we do not read *Howard* to hold that hypothetical questions to vocational experts are required to include lists of claimants' medical conditions.

*Id*. at 633.

Given the above authority, the ALJ's failure to include anxiety disorder in the hypothetical question does not constitute error.

In her reply brief, Albrecht argues for the first time that a proper hypothetical should have included the following limitations: "(1) limited contact with the general public; (2) limited contact with co-workers and supervisors; (3) a low stress work environment;[2] (4) being off task for at least 10% of the work day; and (5) missing at least 2 days of work per month." (ECF No.

---

[2]  A "low-stress work environment that includes infrequent changes that are gradually introduced" was part of both the RFC and the second hypothetical posed to the VE.  (Tr. 30, 70.)

15 at 3-4.)  These limitations appear to be premised on the opinion of consultative examining

psychologist Robert F. Dallara, Ph.D., as Albrecht quotes selected fragments from his opinion

suggesting that she could not handle the pressures associated with daily work activity or

interaction with others.[3]  (ECF No. 15 at 3.)  Here, the Commissioner has essentially been

deprived of an opportunity to address an argument that Albrecht neglected to fully develop until

her Reply.  As such, it would be appropriate to deem the argument waived.  Nevertheless, even if

the Court were to consider Albrecht's argument, it would fail.  In full context, Dr. Dallara opined

as follows:

> ***Describe the claimant's abilities and limitations in responding appropriately to supervision and to coworkers in a work setting***.
>
> The claimant made an essentially unremarkable social presentation during the office setting.  No information was provided to suggest inappropriate comportment during her work history. However due to her depression and anxiety, she may have some difficulties relating to others including fellow workers and supervisors.
>
> ***Describe the claimant's abilities and limitations in responding appropriately to***

---

[3]  Arguments should not be raised or only developed for the first time in a Reply Brief. As another court within this District has explained:

> It is well-established that a party should not raise new arguments in a reply brief. *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 553 (6th Cir. 2008). A reply brief provides a plaintiff the opportunity to respond to arguments raised for the first time in the defendant's brief.  But, the plaintiff cannot wait until its reply brief to assert new arguments because such a practice would effectively deprive the defendant of the opportunity to expose weaknesses in the plaintiff's arguments. *Id*. "These waiver and forfeiture rules ensure fair and evenhanded litigation by requiring parties to disclose legal theories early enough in the case to give an opposing party time not only to respond but also to develop an adequate factual record supporting their side of the dispute." *Winnett v. Caterpillar, Inc*., 553 F.3d 1000, 1007 (6th Cir. 2009).  District courts in this circuit have applied this doctrine in Social Security cases. *E.g.Caley v. Astrue*, No. 5:11 CV 1146, 2012 WL 1970250, at *15, n. 11 (N.D.Ohio June 1, 2012) (Vecchiarelli, J.); *Hamilton v. Comm'r of Soc. Sec*., No. 1:09 CV 260, 2010 WL 1032646, at *6 (N.D.Ohio Mar.17, 2010) (White, J.); *Johnson v. Comm'r of Soc. Sec*., No. 1:09 CV 967, 2011 WL 4954049, at *11 (W.D.Mich. Sept.22, 2011).

*Bender v. Comm'r of Soc. Sec*., 2012 WL 3913094 at * 8 (N.D. Ohio Aug. 17, 2012).

8

> ***work pressures in a work setting***.
>
> The claimant describes a history of accessing mental health services on a voluntary  basis.  She does report she discusses some mental health issues with her primary care physician who is currently prescribing Effexor and Ativan.  She did not report a pattern of inability to adjust to workplace demands nor did she report a history of mental or emotional deterioration in response to work exposure.  However as a result of her depression and anxiety, she may have some difficulties withstanding stress and pressure associated with day-to-day work activity.

(Tr. 668) (emphasis in original).

Dr. Dallara's opinion that Albrecht *may* have "some difficulties" relating to others or *may* have "some difficulties" withstanding the stress/pressure associated with day-to-day work hardly compels the inclusion of the limitations Albrecht suggests.  This is especially true in light of Dr. Dallara's remarks that there was no history of mental deterioration in response to work and no history of "inappropriate comportment" during work history.  In this Court's view, Dr. Dallara's opinion is doubly ambiguous.  First, he only opines that Albrecht *may* have problems in the identified areas, a rather cautious statement that suggests there is also a significant chance that no problems will arise.[4]  Second, the statement that Albrecht might have "some difficulties" fails to express an opinion as to the *severity* of those difficulties in the event they materialize.  Albrecht fails to cite any authority suggesting that mental limitations included in the RFC failed to adequately account for the rather equivocal opinion offered by Dr. Dallara.

As such, Albrecht's first assignment of error is without merit.

### Jobs Identified by the VE

Albrecht's second assignment of error is not altogether clear.  The caption states that the ALJ failed to consider her "ability to maintain work at a Substantial Gainful Activity Level under Social Security Ruling 96-8p."  (ECF No. 13 at 6.)  Social Security Ruling ("SSR") 96-8p concerns an ALJ's assessment of a claimant's RFC.  However, nowhere in her argument does Albrecht explain how the RFC determination failed to comport with SSR 96-8p.  (ECF No. 13 at 6-8.)  Instead, Albrecht takes issue with the three jobs identified by the VE in response to the

---

[4]  Dr. Dallara does not indicate that problems are likely or probable.

second hypothetical, ultimately adopted as the RFC.  (ECF No. 13 at 6-8.)  Apparently, she is

asserting either that she cannot perform the jobs identified and/or that her subjective statements

should have merited a more restrictive RFC.

Once it is determined that a claimant does not have the RFC to perform her past relevant

work, the burden shifts to the Commissioner at Step Five of the disability sequential evaluation

process to show that the claimant possesses the capacity to perform other substantial gainful

activity which exists in the national economy.  *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir.

2001); *Anthony v. Astrue*, 266 F. App'x 451, 460 (6th Cir. 2008) (*citing Young v. Sec'y of Health

& Human Servs.*, 925 F.2d 146, 148 (6th Cir. 1990)).  "To meet this burden, there must be a

finding supported by substantial evidence that [the claimant] has the vocational qualifications to

perform specific jobs."  *Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir.

1987).  The testimony of a vocational expert in response to a hypothetical question may serve as

substantial evidence of a claimant's vocational qualifications to perform certain jobs.  *Id*.

Here the ALJ relied upon the VE's identification of a number of jobs that someone with

Albrecht's limitations could perform.  Any argument that the jobs identified by the VE cannot be

performed by someone with the RFC as determined by the ALJ is not cognizable.  Based on her

own reading of the DOT, Albrecht contends that she cannot perform the jobs of a mailing house

worker, polisher, or document preparer.[5]  (ECF No. 13 at 7-8.)  The Sixth Circuit has addressed

questions of alleged inconsistencies between the VE's testimony and the DOT as follows:

> Even if there were an inconsistency, the plaintiff has not pointed to any authority
> that the ALJ erred in his findings based on the VE's testimony, which went
> unchallenged by the plaintiff until after the ALJ issued his decision. ***As an initial
> matter, neither the ALJ nor the VE is required to follow the DOT***.  *Wright v.
> Massanari*, 321 F.3d 611, 616 (6th Cir. 2003) (holding that "the ALJ and
> consulting vocational experts are not bound by the Dictionary in making disability
> determinations because the Social Security regulations do not obligate them to
> rely on the Dictionary's classifications").  The ALJ fully complied with SSR

---

[5]  Albrecht's argument fails to satisfy this Court that any actual conflict exists between the
VE's testimony and the DOT, as her statements that she cannot perform certain requirements of
the jobs identified are rather conclusory and appear to be based on limitations not actually found
by the ALJ.  Nevertheless, Albrecht's counsel cross-examined the VE at the hearing, but did not
ask about these alleged inconsistencies.  (Tr. 72.)

00-4p, 2000 SSR LEXIS 8 when he asked the VE whether there was "any discrepancy between [her] opinions and the DOT standards for the requirements of the jobs [she] named.*"  See Lindsley*, 560 F.3d at 606 (holding that the ALJ fulfilled his duties when he asked the VE whether there was any "discrepancy between your opinions and the DOT standards," even if the VE did not disclose a conflict).  As *Lindsley* makes clear, the ALJ is under no obligation to investigate the accuracy of the VE's testimony beyond the inquiry mandated by SSR 00-4p, 2000 SSR LEXIS 8.  *Id*.  This obligation falls to the plaintiff's counsel, who had the opportunity to cross-examine the VE and bring out any conflicts with the DOT.  The fact that plaintiff's counsel did not do so is not grounds for relief.  *See Ledford v. Astrue*, 311 F. App'x 746, 757 (6th Cir. Dec. 19, 2008).

*Beinlich v. Comm'r of Soc. Sec.*, 345 Fed. App'x. 163, 168-169 (6th Cir. 2009) (emphasis added).

In the present case, the ALJ specifically asked the VE if his testimony was consistent with the DOT.  The VE responded in the affirmative.  (Tr. 70-71.)  Since Albrecht did not elicit any inconsistencies at the hearing between the VE's opinion and the DOT, the ALJ did not err by relying on the VE's unchallenged testimony.  *See also Wood v. Colvin*, 2014 U.S. Dist. LEXIS 48630 (E.D. Mich. Mar. 20, 2014) ("Since Wood did not take issue with this testimony at the hearing, the ALJ was entitled to rely on the VE's testimony. The Court sees no error committed here.")

Albrecht also maintains that the hypothetical should have included a limitation that she would be off task twenty percent of the time and would miss two days of work per month due to illness.  (ECF No. 13 at 8.)  She bases this statement on her own hearing testimony that "she cannot leave the house about half of the days per week." *Id*.  A claimant does not demonstrate that the RFC determination is unsupported by substantial evidence simply by pointing to her own conflicting hearing testimony, especially where, as here, the ALJ determined that the claimant was not credible.  The ALJ expressly stated that Albrecht's statements concerning the intensity, persistence, and limiting effects of her symptoms were "not entirely credible."  The ALJ spent the ensuing two pages of the decision discussing Albrecht's treatment, including medications, and how the treatment undermined her credibility.  (Tr. 31-33.)  Credibility determinations regarding a claimant's subjective complaints rest with the ALJ.  *See Siterlet v. Sec'y of Health & Human Servs.*, 823 F.2d 918, 920 (6th Cir. 1987).  The ALJ's credibility findings are entitled to considerable deference and should not be discarded lightly.  *See Villareal v. Sec'y of Health & Human Servs.*, 818 F.2d 461, 463 (6th Cir. 1987).  Nonetheless, "[t]he determination or decision

11

must contain specific reasons for the finding on credibility, supported by evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individuals statements and the reason for the weight." SSR 96-7p, Purpose section; *see also Felisky,* 35 F.2d at 1036 ("If an ALJ rejects a claimant's testimony as incredible, he must clearly state his reason for doing so")   Here, however, Albrecht has not argued that the ALJ's credibility determination failed to comport with applicable social security rulings and regulations.

As such, Albrecht's second assignment of error is without merit.

### VII.  Decision

For the foregoing reasons, the Court finds the decision of the Commissioner supported by substantial evidence.  Accordingly, the decision should be AFFIRMED and judgment entered in favor of the defendant.

s/ Greg White
United States Magistrate Judge

Date: July 24, 2015

**OBJECTIONS**
**Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after being served with a copy of this Report and Recommendation.  Failure to file objections within the specified time may waive the right to appeal the District Court's order. *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).**